1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  332 North Second Street
   San Jose, California 95112
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: tanya@moorelawfirm.com

5  Attorney for Plaintiff,
   Anthony Maranon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MARANON, | No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | 1) **Violations of Title II of the Americans with Disabilities Act of 1990** |
| SANTA CLARA STADIUM AUTHORITY; CITY OF SANTA CLARA; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; | 2) **Violations of Title III of the Americans with Disabilities Act of 1990** |
| Defendants. | 3) **Violations of the California Unruh Civil Rights Act** |
| | 4) **Denial of Full and Equal Access to Public Facilities** |
| | 5) **Negligence Per Se – Regulatory and Statutory Violations** |
| | 6) **Negligence – Premises Liability** |
| | 7) **Dangerous Condition of Public Property** |
| | 8) **Breach of Statutory Duty** |

COMPLAINT

Plaintiff, ANTHONY MARANON ("Plaintiff"), alleges as follows:

## I. PARTIES

1. Plaintiff is a resident of the city of Santa Clara, California, who has physical disabilities, as defined by both state and federal law. Specifically, Plaintiff, a law enforcement officer injured in the line of duty, is a T5 paraplegic, cannot walk, and uses a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

2. Defendant SANTA CLARA STADIUM AUTHORITY ("the Stadium Authority") is a public entity. Plaintiff believes, and thereon alleges, that the Stadium Authority owns, operates, and/or maintains Levi's Stadium, located at 4900 Marie P. DeBartolo Way in Santa Clara, California ("the Stadium").

3. Defendant CITY OF SANTA CLARA ("the City," and together with the Stadium Authority, the "Santa Clara Defendants") is a public entity. Plaintiff believes, and thereon alleges, that the City owns the real property in and on which the Stadium is located, and leases the Stadium to the Stadium Authority.

4. Defendant FORTY NINERS STADIUM MANAGEMENT COMPANY LLC ("ManagementCo," and together with the Santa Clara Defendants, collectively "Defendants") is a Delaware limited liability company. Plaintiff is informed and believes, and thereon alleges, that ManagementCo leases the Stadium from the Stadium Authority, maintains and operates the Stadium, and subleases the Stadium to third parties for various events, including, but not limited to, for a San Jose Shark's hockey game on February 21, 2015.

## II. JURISDICTION

5. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for violations of Title II and III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

6. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

7. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III.   VENUE

8.   The real property which is the subject of this action is located within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b).

### IV.   FACTS

9.   The Stadium is open to the public, intended for non-residential use, and its operation affects commerce. The Stadium is therefore a public accommodation as defined by applicable state and federal laws.

10.   Plaintiff attended a San Jose Sharks hockey game which was held at the Stadium on February 21, 2015. During this visit, Plaintiff encountered the following inaccessible conditions at the Stadium:

> a)   Prior to attending the game, Plaintiff had called the Stadium's office to find out where he could locate an accessible parking space to park in when he attended the game. He was advised that he could park in Green Lot 1. Upon arrival on February 21, 2015, Plaintiff and his friend, who was accompanying him to the game, drove to Green Lot 1, where they were met by a law enforcement officer who appeared to be acting as security. The officer informed Plaintiff that the lot, which was the closest parking to the Stadium entrance, was closed to the public as it was reserved for VIP buses. Plaintiff could see that there were over 50 unoccupied designated accessible parking stalls in the lot, but the officer ignored Plaintiff's protests and would not allow Plaintiff and his friend to park there. He directed them to follow the line of traffic, which was backing up behind them, snaking through each of the other parking lots in search of an empty accessible parking stall. They continued on for a very long time, passing full lot after full lot, and ultimately were informed by a security officer that all designated accessible parking stalls were full and, therefore, Plaintiff would have to park in any

available standard stall he could find, although such a parking stall would presumably not have an access aisle for Plaintiff to even unload from his vehicle. Since they were now a great distance away from the Stadium, Plaintiff asked the officer how he was expected to get from the parking lot to the Stadium entrance. Plaintiff was told that carts were available to transport disabled patrons to the Stadium; however, these carts were similar to standard golf carts, and Plaintiff was told they did not have any means to transport Plaintiff's wheelchair. Accordingly, Plaintiff was advised that he would just have to wheel himself to the Stadium. Having become increasingly frustrated and now reaching a breaking point, Plaintiff located a California Highway Patrol officer who was also working security and, despite his reluctance to use his law enforcement status as a means to receive special treatment, Plaintiff explained he was an officer injured in the line of duty and was very upset at the unavailability of accessible parking at the Stadium. At that officer's direction, Plaintiff and his friend drove back to Green Lot 1, where Plaintiff showed his badge to the officer on duty there and was finally allowed to use the accessible parking. Plaintiff was extremely frustrated that, even though he arrived two and a half hours early to the game, there were not enough designated accessible parking stalls made available for him to be able to find one without receiving special privileges from his fellow law enforcement officers. At the time that Plaintiff finally parked in Green Lot 1, there were still dozens of unoccupied designated accessible stalls in the lot.

b) Near the end of the game, Plaintiff took an elevator down to the ground level in order to exit the Stadium. Plaintiff's friend was pushing Plaintiff in his manual wheelchair as they made their way from the elevator toward the exit gates near the Team Store. It was nighttime and the route

of travel inside the Stadium was poorly lit, making it difficult for Plaintiff and his friend to see the surface of the route. Plaintiff unknowingly wheeled over a drainage grate on the ground which had openings running parallel to the direction of Plaintiff's travel. The openings were too wide, and the front wheel of Plaintiff's wheelchair became stuck between the bars of the drainage grate, throwing Plaintiff from his wheelchair to the ground. As a proximate result, Plaintiff suffered serious injuries, including a fractured tibia.

11. The barriers identified in paragraph 10 herein are only those that Plaintiff personally encountered. Plaintiff is presently unaware of other barriers and discriminatory policies which may in fact exist at the Stadium and relate to his disabilities. Plaintiff will seek to amend this Complaint once such additional barriers and discriminatory policies are identified as it is Plaintiff's intention to have all barriers which exist at the Stadium and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Stadium because Plaintiff knows that the Stadium's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Stadium, and will return to the Stadium once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Stadium were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Stadium (without much difficulty or expense), and make the Stadium accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Stadium to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 Standards for Accessible

1 Design. Defendants have not removed such impediments and have not modified the Stadium to
2 conform to accessibility standards. Defendants have intentionally maintained the Stadium in its
3 current condition and have intentionally refrained from altering the Stadium so that it complies
4 with the accessibility standards.

5     15.    Plaintiff further alleges that the (continued) presence of barriers at the Stadium
6 is so obvious as to establish Defendants' discriminatory intent. On information and belief,
7 Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere
8 to relevant building standards; disregard for the building plans and permits issued for the
9 Stadium; conscientious decision to maintain the architectural layout (as it currently exists) at
10 the Stadium; decision not to remove barriers from the Stadium; and allowance that Defendants'
11 property continues to exist in its non-compliant state. Plaintiff further alleges, on information
12 and belief, that the Stadium is not in the midst of a remodel, and that the barriers present at the
13 Stadium are not isolated (or temporary) interruptions in access due to maintenance or repairs.

14 <center>**V.    GOVERNMENT CLAIM FILED**</center>

15     16.    Plaintiff timely filed a claim pursuant to California Government Code section
16 910 with the Santa Clara Defendants on or about May 28, 2015, which claim was deemed
17 rejected on July 12, 2015 by operation of law. Notice of such rejection by the City was mailed
18 on July 20, 2015. Plaintiff has not received a written notice of rejection from the Stadium
19 Authority.

20 <center>**VI.    FIRST CLAIM**</center>
21 <center>**Title II of the Americans with Disabilities Act of 1990**</center>
22 <center>**(42 U.S.C. § 12131, *et seq.*)**</center>
23 <center>**Against the Santa Clara Defendants**</center>

24     17.    Plaintiff re-pleads and incorporates by reference the allegations contained in
25 each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.
26     18.    The Stadium is a program, service and activity offered by the Santa Clara
27 Defendants to the general public.
28 ///

19. Plaintiff is informed and believes, and thereon alleges, that the start date of construction on the Stadium was on or after March 15, 2012.

20. As the result of the Santa Clara Defendants' acts and omissions, as herein described, Plaintiff was, and continues to be, denied full and equal access to the programs, services and activities offered to the public in and about the Stadium, and as a proximate result he has suffered severe bodily injury, discrimination, humiliation, frustration, embarrassment, fear, pain, mental anguish, difficulty, and discomfort, all to his damage.

21. The nature of the Santa Clara Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiff and other similarly situated persons with disabilities.

22. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

23. At all times relevant to this action, the Santa Clara Defendants were "public entities" within the meaning of Title II of the ADA, and provided programs, services and/or activities to the general public at the Stadium.

24. Plaintiff is, and at all times relevant herein was, a "qualified individual with a disability" within the meaning of Title II of the ADA, and meets the essential eligibility requirements for the receipt of the services, programs, or activities offered by the Santa Clara Defendants at the Stadium.

25. To be considered accessible, a certain percentage of the total number of parking stalls must comply with the accessibility standards. 2010 ADA Standards for Accessible Design, 28 C.F.R. § 35.151 ("2010 Standards"), § 208.2. An accessible parking stall, among other requirements, must be located on the shortest accessible route to an accessible Stadium entrance and must have an adjacent access aisle for loading/unloading. 2010 Standards §§ 208.3 and 502.2. While the Stadium did appear to have designated accessible parking stalls, by making the lot in which the accessible stalls were located off-limits for parking, the Stadium

1  rendered such parking stalls useless to Plaintiff and all other disabled patrons.

2       26.    To be considered accessible, openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch in diameter and elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel. 2010 ADAS, § 302.3. The openings in the grate which Plaintiff's wheelchair became caught in were significantly wider than 1/2 inch and their long dimension was not perpendicular to the dominant direction of travel.

     27.    The duties to make the Stadium accessible to Plaintiff enumerated herein were mandatory duties held by the Santa Clara Defendants. The Santa Clara Defendants are deemed to have knowledge of these duties.

     28.    The Santa Clara Defendants' acts and omissions as herein alleged have excluded and/or denied Plaintiff the benefit of and/or participation in the programs and activities they offer to members of the public at the Stadium, in violation of Title II of the ADA and its implementing regulations.

     29.    On information and belief, to the date of the filing of this Complaint, the Santa Clara Defendants have failed to make the Stadium accessible to and useable by persons with disabilities, as required by law, have failed to maintain existing facilities in a properly accessible condition, and have intentionally maintained policies and/or practices of denying full and equal access to their facilities to persons with disabilities.

     30.    Plaintiff requests that an injunction be issued requiring that the Santa Clara Defendants make the Stadium accessible to and useable by persons with disabilities who have mobility impairments, and to maintain the Stadium in an accessible condition.

     31.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that the Santa Clara Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

///

///

///

## VII.   SECOND CLAIM

### Title III of the Americans with Disabilities Act of 1990

### (42 U.S.C. § 12181, *et seq.*)

### Against ManagementCo

32. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

33. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

34. Plaintiff is informed and believes, and thereon alleges, that the last application for a building permit or permit extension for construction of the Stadium was certified to be complete by a State, county, or local government on or after March 15, 2012.

35. Plaintiff is informed and believes, and thereon alleges, that the last application for a building permit or permit extension for construction of the Stadium (if any) was received by a State, county, or local government on or after March 15, 2012, where the government did not certify the completion of applications.

36. Plaintiff is informed and believes, and thereon alleges, that the start of physical construction on the Stadium took place on or after March 15, 2012.

37. ManagementCo discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Stadium during each visit and each incident of deterrence.

<u>Failure to Design and Construct an Accessible Facility</u>

38. The ADA prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

39. Here, ManagementCo violated the ADA by designing and constructing (or both) the Stadium in a manner that was not readily accessible to the physically disabled public –

including Plaintiff – when it was structurally practical to do so.[1]

<p style="text-align:center;"><u>Failure to Modify Existing Policies and Procedures</u></p>

40. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

41. Here, ManagementCo violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Stadium, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations. Specifically, ManagementCo prevented and/or discouraged patrons, including Plaintiff, from parking in the designated accessible parking located closest to the entrance of the Stadium.

42. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

43. Plaintiff seeks a finding from this Court (i.e., declaratory relief) that ManagementCo violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

<p style="text-align:center;"><b>VIII. THIRD CLAIM</b></p>
<p style="text-align:center;"><b>California Unruh Civil Rights Act</b></p>
<p style="text-align:center;"><b>California Civil Code § 51, <i>et seq</i>.</b></p>
<p style="text-align:center;"><b>Against All Defendants</b></p>

44. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

45. California Civil Code § 51 (the Unruh Civil Rights Act) states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations,

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

46. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

47. The Stadium is a business establishment which is open to the public and provides services to the public.

48. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act Civil Rights Act.

49. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability), in violation of the ADA, which is therefore a violation of the California Unruh Civil Rights Act.

50. Defendants' failure to provide Plaintiff full and equal access to the Stadium caused Plaintiff difficulty, discomfort and embarrassment, all to Plaintiff's damage.

51. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

52. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory damages up to a maximum of three times the amount of his actual damages, according to proof, but in no case less than four thousand dollars ($4,000.00) (Cal. Civ. Code § 52(a)).

53. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and the ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

### Against All Defendants

54. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

55. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

56. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

57. Plaintiff alleges the Stadium is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Stadium was not exempt under Health and Safety Code § 19956.

58. Defendants' non-compliance with these requirements at the Stadium aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. FIFTH CLAIM

### Negligence Per Se – Regulatory and Statutory Violations

### Against ManagementCo

59. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

60. At all times mentioned herein, ManagementCo owned, operated, managed, maintained and controlled the Stadium, and had a duty to operate said premises in conformance with all applicable laws and regulations to ensure invitees, such as Plaintiff, were not subject to a risk of harm which laws and regulations were implemented to prevent.

61. At all times mentioned herein, the 2010 Standards provided:

> *Section 302.3 Openings. Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (13 mm) diameter except as allowed in 407.4.3, 409.4.3, 410.4, 810.5.3 and 810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

62. At all times mentioned herein, the California Code of Regulations, Title 24, Part

2, Chapter 11B (the California Building Code), provided:

> *Section 11B-302.3 Openings. Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (12.7 mm) diameter except as allowed in Sections 11B-407.4.3, 11B-409.4.3, 11B-410.4, 11B-810.5.3 and 11B-810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

63. At all times mentioned herein, ManagementCo was in violation of the aforesaid regulations because the openings in the grate which Plaintiff's wheelchair became caught in were significantly wider than ½ inch and their long dimension was not perpendicular to the dominant direction of travel.

64. Both the ADA regulations and the access standards contained within the California Building Code are intended to protect persons with disabilities, of which Plaintiff is a member.

65. As a direct and proximate result of the negligence of ManagementCo as set forth above, the front wheel of Plaintiff's wheelchair became stuck between the bars of the drainage grate, throwing Plaintiff from his wheelchair to the ground.

66. As a further direct and proximate result of the negligence of ManagementCo as set forth above, Plaintiff sustained serious injury in the form of a fractured tibia, which caused him medical expenses and tremendous pain and suffering for a significant period of time, in amounts according to proof.

67. But for the negligent acts and omissions of ManagementCo and the violations of the aforementioned regulations by ManagementCo, as set forth herein, Plaintiff would not have been injured by the unlawfully constructed and/or maintained drainage grate at the Stadium.

## XI. SIXTH CLAIM

### Negligence – Premises Liability

### Against ManagementCo

68. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

69.     At all times mentioned in this complaint, ManagementCo owned, operated, maintained, controlled and managed the Stadium, and had a duty to exercise ordinary care in the use, maintenance and management of such premises in order to avoid exposing any persons present in said premises as an invitee, such as Plaintiff, to an unreasonable risk of harm. ManagementCo invited the general public, including Plaintiff, to enter the Stadium.

70.     At all times mentioned herein, ManagementCo breached its duty of care by negligently:

    a)  Failing to construct and/or maintain the drainage grate described herein in a reasonably safe condition;

    b)  Allowing said drainage grate to be constructed and/or maintained in such a fashion as to cause injury to Plaintiff when ManagementCo knew, or in the exercise of reasonable care should have known, that the configuration of the drainage grate created an unreasonable risk of harm to customers in the Stadium, specifically customers in wheelchairs;

    c)  Failing to warn Plaintiff of the danger presented by their failure to properly construct and/or maintain said drainage grate; and

    d)  Failing to otherwise exercise due care with respect to the matters alleged in this complaint.

71.     As a direct and proximate result of the negligence of ManagementCo as set forth above, the front wheel of Plaintiff's wheelchair became stuck between the bars of the drainage grate, throwing Plaintiff from his wheelchair to the ground.

72.     As a further direct and proximate result of the negligence of ManagementCo as set forth above, Plaintiff sustained serious injury in the form of a fractured tibia, which caused him medical expenses and tremendous pain and suffering for a significant period of time, all in amounts according to proof.

///

///

///

## XII. SEVENTH CLAIM

### Dangerous Condition of Public Property

### (California Government Code §§ 830, 835)

### Against the Santa Clara Defendants

73. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

74. At all times mentioned herein, including at the time Plaintiff suffered injury as described herein, the improperly constructed and/or maintained drainage grate which caused Plaintiff injury created a substantial risk of injury to members of the general public when the Stadium was used with reasonable care and in a reasonably foreseeable manner. Accordingly, said drainage grate is a "dangerous condition" as defined by California Government Code § 830.

75. At all times mentioned herein, the Santa Clara Defendants owned, operated, maintained, controlled and managed the Stadium, and had the power to prevent, fix, or guard against the dangerous condition created by the improperly constructed and/or maintained drainage grate described herein.

76. Plaintiff is informed and believes, and thereon alleges, that the Santa Clara Defendants, or an employee of the Santa Clara Defendants acting within the scope of his or her employment, created the dangerous condition by improperly constructing and/or maintaining said drainage grate in a way that did not comply with applicable state and federal building standards.

77. Plaintiff is informed and believes, and thereon alleges, that the dangerous condition consisting of the improperly configured drainage grate described herein had existed for enough time prior to causing Plaintiff's injury and was so obvious that the Santa Clara Defendants should have discovered the condition and its dangerous character and should have taken measures to protect the public against the dangerous condition.

78. As a direct and proximate result of the dangerous condition caused by the conduct of the Santa Clara Defendants as set forth above, the front wheel of Plaintiff's

1 wheelchair became stuck between the bars of the drainage grate, throwing Plaintiff from his
2 wheelchair to the ground.

3     79.    As a further direct and proximate result of the dangerous condition caused by
4 the conduct of the Santa Clara Defendants as set forth above, Plaintiff sustained serious injury
5 in the form of a fractured tibia, which caused him medical expenses and tremendous pain and
6 suffering for a significant period of time, all in amounts according to proof.

## VIII.

## EIGHTH CLAIM

### Breach of Statutory Duty

### (California Government Code § 815.6)

### Against Santa Clara Defendants

12     80.    Plaintiff re-pleads and incorporates by reference the allegations contained in
13 each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

14     81.    At all times mentioned herein, the Santa Clara Defendants, built, owned,
15 operated, managed, maintained and controlled the Stadium, and had a duty to build and operate
16 said premises in conformance with all applicable laws and regulations to ensure invitees with
17 disabilities, such as Plaintiff, were not subject to a risk of harm which laws and regulations
18 were implemented to prevent.

19     82.    At all times mentioned herein, the 2010 Standards provided:

> *Section 302.3 Openings. Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (13 mm) diameter except as allowed in 407.4.3, 409.4.3, 410.4, 810.5.3 and 810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

25     83.    At all times mentioned herein, the California Code of Regulations, Title
26 24, Part 2, Chapter 11B (the California Building Code), provided:

> *Section 11B-302.3 Openings. Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (12.7 mm) diameter*

*except as allowed in Sections 11B-407.4.3, 11B-409.4.3, 11B-410.4, 11B-810.5.3 and 11B-810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

84. At all times mentioned herein, the Santa Clara Defendants were in violation of the aforesaid regulations and in breach of their statutory duty because the openings in the grate which Plaintiff's wheelchair became caught in were significantly wider than one-half inch and their long dimension was not perpendicular to the dominant direction of travel.

85. Both the ADA regulations and the access standards contained within the California Building Code are intended to protect persons with disabilities from injury, of which Plaintiff is a member.

86. Compliance with both the ADA regulations and the access standards contained within the California Building Code, set forth in paragraphs 82 and 83, was and is mandatory and not discretionary.

87. As a direct and proximate result of the Santa Clara Defendants' violation of the aforementioned mandatory regulations and breach of their statutory duties, the front wheel of Plaintiff's wheelchair became stuck between the bars of the drainage grate, throwing Plaintiff from his wheelchair to the ground.

88. As a further direct and proximate result of the Santa Clara Defendants' violation of the aforementioned mandatory regulations and breach of their statutory duties, Plaintiff sustained serious injury in the form of a fractured tibia, which caused him medical expenses and tremendous pain and suffering for a significant period of time, in amounts according to proof.

89. But for the violations of the aforementioned regulations and attendant breach of their statutory duties by the Santa Clara Defendants, as set forth herein, Plaintiff would not have been injured by the unlawfully constructed and/or maintained drainage grate at the Stadium.

///

///

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper;
2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages;
3. Statutory damages under section 52(a) of the California Civil Code up to a maximum of three times the amount of his actual damages, according to proof, but in no case less than four thousand dollars ($4,000.00);
4. General damages according to proof;
5. Special damages according to proof;
6. Attorneys' fees, litigation expenses, and costs of suit;[2]
7. Interest at the legal rate from the date of the filing of this action; and
8. For such other and further relief as the Court deems proper.

Dated: October 5, 2015                      MOORE LAW FIRM, P.C.

                                                          */s/ Tanya E. Moore*
                                                          Tanya E. Moore
                                                          Attorney for Plaintiff,
                                                          Anthony Maranon

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

# VERIFICATION

I, ANTHONY MARANON, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: October 5, 2015                 /s/ Anthony Maranon
                                       Anthony Maranon

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                       /s/ Tanya E. Moore
                                       Tanya E. Moore, Attorney for
                                       Plaintiff, Anthony Maranon